Mr. Gelfand, good morning. Good morning, Your Honor. The Court notes that you were appointed under the Criminal Justice Act. I was, Your Honor. And the Court wants you to know that we deeply appreciate your willingness to accept the appointment. It's a privilege of mine, Your Honor. May I proceed? You may proceed, Judge. Thank you. Good morning, and may it please the Court. In 1984, the United States Supreme Court in Leon gave us what is now commonly known as the good-faith exception to the exclusionary rule. But in that seminal case itself, the United States Supreme Court made clear that a warrant that is so facially deficient that it fails to particularize either the place to be searched or the items to be seized falls outside of the exception because such a warrant is one that no law enforcement officer can reasonably rely on. The United States Supreme Court in 2004, approximately 20 years later, reiterated the Leon principle that I just cited in a case called Grovey-Ramirez. And to this day, that legal standard is as clear as it is binding and directly applicable to the first issue on appeal in this case. In this particular case, with respect to the suppression issue, the court below correctly concluded that the searches of the hotel room and the car were warrantless in the sense that the warrant itself that the law enforcement officer, the Detective Sergeant Nijkamp of the St. Louis Police Department, applied for did not actually authorize the search of either the hotel room or the car. Where the trial court erred was in concluding that the good faith exception nevertheless applied. With respect to the warrant, the trial court's factual conclusions that the warrant itself did not describe the place to be searched or the items to be seized are A, accorded significant deference under the clear error standard, but B, are very obvious even if this court were to independently look at the warrant itself, the relevant portion of which is cited directly in our opening brief and quoted directly in our opening brief. The trial court... Isn't this warrant just a... this has the look of a boilerplate problem to me. If you look at the affidavit, it sets forth clearly what they were looking to search and why they were looking to search it. Then you look at the warrant form itself, and the warrant form at the top explains that they're looking to search a hotel room and a gold Mercedes. And then it says, whereas the judge finds the allegations supported by the written affidavits, blah, blah, blah, you're commanded to search said person above. Well, there is no said person above. And my guess is that there's a warrant form someplace that says things to be searched, and there's one that says persons to be searched, and somebody stuck this warrant on the wrong form. And my guess is, if you look at the bottom half of that, that there is almost no likelihood that the warrant officers that executed the warrant ever bothered to look at the bottom language, or they would have gone back to the judge and said, hey, judge, this is not what we asked for. Is that what you meant to do? But more probably, it was drafted by the officer or the county attorney, and somebody just dropped the ball there. And they looked at the hotel room, the gold Mercedes, and went out there. Now, by definition, you're saying that can't be good faith. Yes, Your Honor, and for two reasons. One, the district court itself correctly concluded that the warrant lacked any incorporating language incorporating the affidavit or the application. And that alone is, again, subject to considerable deference under the clear error standard. But furthermore, that's significant as a matter of case law. But furthermore, the warrant itself, just as a matter of fact, it might not be significant given what Your Honor has pointed out. The warrant itself that you referenced, Judge Erickson, does actually reference a person. It referenced Akeisha Edwards. And it's at the top of the warrant itself on the paper that we've submitted as part of the record. It does. As a practical matter, what happened in this case, though, still cannot survive the good faith exception. But it only references Akeisha Edwards to the extent that she was a person who was registered in that particular hotel room. And that the vehicle was parked next to the hotel room that was registered to her. It didn't really say she was the subject of the search, right? I think that's fair, Your Honor, other than the part of the warrant that said that the search… Searched the person, and she's the only person in there, right? The warrant itself is, I think it's diplomatic to say difficult to understand in terms of the actual substance of it. But more importantly, Your Honor, the reason that even if all of that is… If the benefit of the doubt is given to the government in this case, the warrant itself does not even attempt to particularize the items to be seized. That's a fatal flaw under binding precedent, not only in cases like Leon, but more recently in Grovey Ramirez. In that particular case, it could not have been a more clear fact pattern. The application itself requested… The law enforcement officer in that particular case requested the opportunity to seize particular items. I believe there were guns, perhaps ammunition, things like that. A different set of circumstances. But the warrant itself did not incorporate the affidavit. What the U.S. Supreme Court said in no uncertain terms in that 2004 case is that the four corners of the warrant must particularize the items to be seized. This warrant, and candidly, the affidavit as well, which isn't incorporated into it, does not give the law enforcement officers reasonable guidance or any guidance as to what to seize when they enter the hotel room. And in the suppression hearing itself, Your Honor, and this is in the transcript and the record, I actually asked the law enforcement officer, Sergeant Nijkamp, who executed the warrant, what criteria did you use to decide what to seize? One would think that the appropriate answer to that question would be, I looked at what I could seize under the search warrant, and I used my training and experience and did my best to apply that. There was no answer, much less any coherent answer, as to what criteria she used because there was no criteria. That's a fatal flaw of constitutional significance when it comes to this Fourth Amendment jurisprudence. And because the good faith exception does not and cannot apply, this court must reverse on those grounds. With respect to that particular issue, the government, in its brief at the very least, seems to focus acutely on the subjective purported belief of Sergeant Nijkamp when executing the search warrant. But all I wanted to point out with respect to that is that as a practical matter, as a matter of law, what's crystal clear in Leon and Grow and all of the progeny of case law in the Eighth Circuit and elsewhere that follows that, is that it's an objective test as to whether a reasonable law enforcement officer, based on the warrant itself, could have reasonably relied in good faith and believing that it was an appropriate warrant. So I think that a perhaps long-winded but direct answer to get back to your question, Judge Erickson, is that the simple fact that there might be what I would loosely, perhaps diplomatically call a copy and paste error, doesn't somehow cure this matter of constitutional significance, especially because it lacked even a suggestion of items to be seized. And I think that that is, candidly, very determinative. Because the government did not even attempt to establish that this error was harmless beyond a reasonable doubt, and that's the heavy burden that the government would have to meet to survive this constitutional problem, this court should, as a practical matter, reverse this case on those grounds alone. The second issue that I wanted to address, it's actually the third issue in appeal, is the issue of Federal Rule of Criminal Procedure 16A1G. And that's the issue of the expert witness, and in particular the notice requirement. What the government provided in this particular case was notice that it intended to call an expert named Derek Stigerts, who was a law enforcement officer, basically a detective in Northern California, and that he would testify about certain subjects. We objected at the appropriate time, and there's no dispute as to the timeliness or the scope of that objection, I don't believe, that the government failed to comply with Rule 16A1G because that rule, since 1993, since it was amended, expressly requires disclosure of the opinions of any expert witness and the bases and reasons for those opinions. Because to this day, the government has not disclosed the opinions or the bases of any opinions of Detective Stigerts. And this is significant because we referred to a district court case, the Cerna case in our brief, that focuses on the prejudice to a defendant, which we do have to prove to establish reversal on this ground, and I think we have established that. That, as a practical matter, this prohibited the defendant from properly framing, as the district court said in that case, a Daubert motion, from effectively preparing to cross-examine this expert on what he would say, and from considering retaining our own counter-expert. As a practical matter, that was significantly prejudicial to Mr. Zerba because the first time that we learned what Detective Stigerts was going to opine, which in particular was itself problematic, was when he testified on direct examination at trial. And that's exactly what Rule 16A1G and the cases we cited enforcing that rule are supposed to prohibit from happening and to prevent from happening. The second issue with the expert issue is that expert testimony under Rule 702 of evidence has to be based on reliable principles and methods, and in this particular case, as we appropriately and timely objected, this wasn't based on any methodology. This detective basically testified, and I don't mean to oversimplify, I want to be fair, but he basically said, I've interviewed a number of alleged prostitutes and a number of alleged people involved in the sex trade, and based on those interviews, here's what I have come to understand certain subcultures to be and certain terms to mean and things like that. And that was offered as expressly as expert testimony over our objection at trial. This raises a very serious confrontation clause issue that we properly preserved at the trial court, because what this detective effectively did was parrot back testimonial statements made to him in the course of interrogations of people he was interviewing, alleged prostitutes, alleged pimps, maybe there's a better word to use in a federal appellate court. But those statements that the detective was relaying and the questions that elicited that testimony were clearly testimonial. Mr. Zerba never had the opportunity to question and to cross-examine the declarance of those statements. So when a quote-unquote expert comes into court and says, I understand the word king, for example, to potentially refer to an alleged pimp, when what he's really saying is, someone I interviewed in an interrogation told me that, he is parroting testimonial statements in violation of the confrontation clause. You know, the one thing is that throughout the country, there've been a lot of these kinds of experts that have been called in really a number of types of cases, but most commonly in drug cases and human trafficking cases. And they put these people on who've worked 30 years as detectives and they say, the word daddy means pimp, you know, the word snow means a particular drug, an eight ball is X, you know, and that evidence comes in all the time and it's rarely disclosed by an expert opinion the way that we do sort of all the other scientific experts. I mean, if you just look about the common practice in trial courts all around the country is when they say, we're going to call a human trafficking expert and they're going to talk about the business, right? Are all those cases then wrongly presented or should they be required to say, we're going to ask a question of what does the term daddy mean in this trade? I think yes, your honor. And I think rule 16, a one G makes that very clear. Rule 16, a one G, interestingly enough, was amended in 1993. I believe it might have been 1994. But in that year, the prior law and the prior practice was basically to limit these kinds of expert disclosures just to scientific experts. For example, a chemist, a DNA expert, although not, you know, not as commonly in the early nineties. But those kinds of expert disclosures, what the committee decided and what was has subsequently been adopted into binding law into our practice is that this expert requirements apply to any kind of expert that's being offered and tendered as an expert. As detective Steiger, it's unambiguously and undisputedly was in this case. I think there's perhaps an argument that sometimes, for example, and perhaps the run of the mill drug case, a lead special agent for the DEA who might testify based on my training and experience, this refers to cocaine or whatever it may be. Perhaps that falls outside the scope of expert testimony in a certain case and therefore outside the scope of rule 16, a one G. But there is no dispute in this case that detective Stiger, it's was testifying consistent with that he admitted under oath, your honor, that he had no involvement at all with this particular case, even further underscoring that this was truly quote unquote expert testimony. And it was noticed up as such. It was just a defective notice with respect to the next issue, which admittedly is briefed pretty extensively. The government withheld substantial Brady and Giglio material from us until day five of a what was effectively a five day trial, technically six days, if you include the last day of deliberation. The government had interviewed 18 months before trial a key witness named Michael Ritty. The details of that interview are set out in the record and in our briefs. And the government, for some reason, notwithstanding our many, many requests since the arraignment of this case, to be candid, withheld this testimony. This deprived us from cross examining the sole alleged victim in this case, an adult who's referred to as initials as BM. So I'll refer to her as such, as well as Sergeant Nijkamp, the lead police officer. In this case, the interview of Mr. Ritty was conducted by Sergeant Nijkamp and Special Agent Lynch of the FBI, who sat at prosecution counsel's table throughout the entire trial. Well, we were making statements that might have been different and asking questions that might have very well and would have been different had we had this exculpatory and impeachment evidence that's at a minimum, clearly Giglio and I think arguably Brady. The significance of this is that if cross examination, and I believe it is, I believe the law supports this, really is, as the Supreme Court said in 1999, the greatest legal engine ever invented for the discovery of truth. The government's position saying, well, essentially, well, you got it eventually, you got it so that you could theoretically call Special Agent Lynch and inquire about this interview, really guts the opportunity that Mr. Zerba had to cross examine the sole alleged victim on this important impeachment evidence. And that substantially prejudiced Mr. Zerba. The last issue I wanted to briefly address, which the court obviously need not get to, if it, as I think it should, reverses these convictions, is a sentencing issue that at a minimum requires remand for sentencing. What the court did in this case was substantial procedural error in that the court applied a guideline that only applies to conduct described in a federal statute, 18 U.S.C. 2242. But the court read out the requirement in that statute that that only applies if the alleged conduct occurs in the special maritime and territorial jurisdiction of the U.S. or a federal prison. That term special maritime and jurisdictional, I'm sorry, territorial jurisdiction is actually defined by statute. It refers generally to Native American reservations, spaceships, islands with guano. And it's a very, very narrow set of circumstances. The court did not explain the reasons for the sentence it imposed other than a fairly boilerplate pursuant to 3553A and the guidelines I'm giving you 140 months did not even address any of the 3553A factors. And that requires resentencing. I'd like to reserve, if I may, the rest of my time for rebuttal. You may do so. Winfield, good morning. You may proceed. Good morning, Your Honors. May it please the court counsel. My name is Jennifer Winfield and I represent the government in this case. First and foremost, we are here to maintain that the district court properly denied the defendant's motion to suppress and that the district court did not abuse its discretion in allowing Detective Stiger to testify and denying the defendant's motion for a mistrial, which he did not address in his first portion of his argument. Also, the government maintains that the district court did impose a procedurally and substantively reasonable sentence and the district court properly denied defendant's motion for a new trial. First and foremost, the government would like to address the issue regarding the motion to suppress. Of course, this case involves an initial search warrant that Mr. Gelfand just described. In this particular case, it was a search warrant that was obtained by an investigative team that started at approximately 5 a.m. after they received a 911 call from the victim, who was hiding in a trash can, a dumpster, after she had just escaped from her sex traffickers. Upon finding the victim, the investigative team then went about trying to pull video from the hotel, pull video from the building security. They then went about their exhaustive attempt to get as much information as possible. In the interim, they did generate the search warrant affidavit. So I'd ask that you look at the district court document, which is 102, because I'd ask that when you look at it, you see that this case is distinguished from GRO, which the appellant cites, and that in GRO, it did not deal with a search warrant affidavit that was incorporated with other documents. In this particular case, when you look at the search warrant that the judge signed, you will see that the judge actually signed the search warrant affidavit as well as the search warrant. So in that, our argument is that this case is more similar to the cases that this court has had before, which are Gamboa and Baranski. And in both of those cases, this particular court held that GRO did not rule upon the validity of a warrant that sufficiently incorporated a second document. In both of those cases, they dealt with, we would argue, a similar instance here, wherein the state court judge actually recited that he was satisfied that the probable cause was there, and he believed the allegations of the complaint to be true and that there was probable cause for issuance of the search warrant. And the search warrant specifically reads, whereas the judge of this court, from the sworn allegations of said complaint and from the supporting written affidavits filed therewith, has found that there is probable cause to believe that allegations of the complaint to be true and probable cause for the issuance of the search warrant. So in this case, we would argue there was a technical error made. However, we would ask this court to recognize, as the United States Supreme Court did in Maryland v. Garrison, that that court recognize the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants. There's been an argument advanced that the warrant does not sufficiently state the items to be searched for. And if the affidavit is incorporated, as you argue, because they've been both signed by the judge and the judge does say the supporting affidavits filed herewith, or therewith, that the affidavit says that there are things in the room, including such things as cell phones, laptops, large amounts of cash, condoms, lubricants, receipts, paperwork, all relating to the crime. Is that a sufficient description of the items to be searched for in your opinion? Correct, Your Honor. That's what I was about to get to. So there is a list in the affidavit that you just read that does specifically list items that Sergeant Knight Camp testified to in the suppression hearing. If you go to her testimony, she testified to the items that she thought she would find in the hotel. And there's never been an argument that there wasn't an abundant amount of probable cause in this case. And there's never been any allegation of any false statements. We have probable cause. We have no false statements. We had good faith. Sergeant Knight Camp testified that she believed that she had a proper warrant to go forth and execute on both the hotel room and the vehicle. And that's exactly what she did. In addition to the good faith argument, the government also maintains that in terms of plain view, these items were in plain view when the officers first came into the hotel room. So based on the fact that the incriminating nature of the items that the officers saw when they first entered the room and the vehicle, as those incriminate the incriminating nature of those items, that was obvious. That was a basis for the officers to also be able to seize those items. So the district court did not, there was no clear error regarding the district court's legal determination that the evidence should not be suppressed. Now, when we go to the issue of the Brady Giglio argument that the defendant makes, I'd ask that the court note that in this particular case, we dealt with a large amount of discovery. The government turned over 5,000 pages of documents to these two defendants and that included discovery for B information that does not even exclude the Westin video, the hotel video, the security footage, the 911 call, the dispatch tapes. So all of this information was turned over. This was an inadvertent, it was a mistake. Nevertheless, the government definitely, definitely no doubt takes serious the fact that we have to turn over everything that we have. But considering as soon as the government's attorney found out that the, this 302 existed before we even arrived to court, the government's attorney requested that the witness be brought to the court immediately. So before the defense counsel even requested that, the witness was on his way down. And so in addition to that, this 302 was turned over in sufficient time for a defense counsel to use it. So in this particular case, the rule of Brady is limited to discovery after trial of information, which had been known to the prosecution, but unknown to the defense. So in essence, this was not, this was not suppressed under any circumstances. Did the defendant ever request an in-trial continuance for purpose to follow through on the late disclosure? There was no request for continuance, Your Honor. However, there was a request to go into the statement with Agent Lynch. And if you go to trial volume number four, he obtained that opportunity. He did question Agent Lynch about that. He did not ask for a mistrial. So therefore, there is no clear error on the district court's part for failing to sui sponte order a mistrial. He did not ask for a mistrial. He did ask to speak with Agent Lynch about it. He also had an opportunity to speak with Sergeant Nykamp about it. I also would like to tell you there's nowhere in the record that defense counsel requested that the government bring back the victim in the case. The government always makes all of the witnesses available for recall. There was no request made. There's nowhere in the record that says that. And in addition to that, this 302 was really not material because the accused must show that there is a reasonable probability that if the allegedly suppressed evidence had been disclosed at trial, the result of the proceeding would have been different. If you look to the district court's memo, memorandum and order denying the defendant's motion for a new trial, the district court even noted the FBI report is not even arguably exculpatory. So it was not material. It was not exculpatory. And most importantly, it was not suppressed. Defense counsel had an opportunity to use it to question whomever he wanted about it. And if you would go to trial volume four, page five and six, you will see the court asking Mr. Gelfand, what are you asking about this? And on pages five and six, the first response was, that's a good question, Your Honor. But then he just goes on to ask to speak with Agent Lynch about it. The court then informs him he's allowed to bring Sergeant Nykamp back. So at that juncture, the court said, all right, anything else? And Mr. Gelfand said, not from the defense, Your Honor. So this information was not suppressed. It was immaterial and it was not exculpatory. The next issue that I'd like to address is the sentencing issue with regards to the court's application of 2G1.1C1 and the application note and the pronouncement of the sentence. So first and foremost, the government would argue that the cross-reference used by the district court was supported in this case by the evidence. The calculations of the guidelines were reasonable. And so they should be reviewed for the abuse of discretion. So in this case, the district court was allowed to use the defendant's relevant conduct in sentencing him. In this case, that relevant conduct did include testimony from the victim. It included testimony regarding the extreme pain that she was in. This involved the application of the guideline regarding criminal sexual abuse involved a sponge, in essence. And I hate to be graphic here, a sponge that was lodged in the vagina of the victim. So she testified to the excruciating pain that she experienced with this sponge being lodged in her vaginal cavity. And the fact that the defendant, Mr. Zerba, actually attempted to extract that with tweezers, which caused her more pain. Then she had to go to the hospital in order to get the sponge removed. And the fact that the cross-reference has to deal with criminal sexual abuse. In essence, the evidence put forth at trial all supported the fact that we should use the cross-reference. So therefore, the guidelines were properly calculated. And in imposing the sentence in this particular case, the district court did pronounce sentence. He did, if you go to Sentencing Transcript 35, he did explain that he noted the downward departure in all of the defense counsel's argument. And he did reference on page 35 of the Sentencing Transcript that he was sentencing pursuant to the Sentencing Reform Act and provisions of 18 USC 3553A. This district court, in addition to that, the defense did not specifically object to the sufficiency of the court's explanation of the sentence, but this district court sat through the entire trial. The district court heard all of the evidence and considered all of the evidence in fashioning a sentence that he thought was appropriate. So regardless of the standard of review that is applicable to this case, the district court did not err in calculating the range of punishment in this case. The calculations in this sentence was reasonable. Now, one thing that I believe the defense counsel did not get an opportunity to get to, but probably will after I sit down, has to do with the mistrial request regarding a juror. And in this particular case, I'd ask that you all go to Trial Volume 5, page 4, and you'll see that the district court stated at that time that it was going to declare that a mistrial was going to take place in the presence of the jury. So in this particular case, if the district court was declaring a mistrial outside the presence of the jury, then there would be no need to go in front of the jury to declare it. So in essence, the government maintains that there was never a mistrial declared in this case. If you go to Trial Volume 5 and go to page 4, you will see that the court, under no circumstances, insinuated that the defendant did not agree to move forward with only 11 jurors. Specifically, the court stated the parties have not agreed to go forward with 11. So the defense counsel's argument in his appeal, or the defendant's argument in his appeal, that the court insinuated somehow that the defendant didn't agree with going forward with only 11 jurors somehow was prejudicial to him. It's just not the case. In addition to that, I'd ask the court to note that under Federal Rule of Criminal Procedure 23B3, that permits the use of an 11-person jury in a trial at the discretion of the trial court, particularly in the case of a protracted trial. So we could have even moved forward with 11 jurors if need be. Nevertheless, there was no mistrial declared in this case. The parties agreed not to go forward with 11, and there was no prejudice in any way to the defendant in this particular case with any comment that the judge made on the record. The last point on appeal was sufficiency of the evidence. Of course, the sufficiency of evidence is a de novo review, so the review of the evidence is going to be in the light most favorable to the verdict. In this particular case, as outlined in our brief, there was a substantial amount of evidence presented. That evidence included the victim testifying to her acts of prostitution and those of co-defendant Keisha Edwards, and how those acts of prostitution were facilitated by ZERBA. In this particular case, there was also testimony by law enforcement officers and the victim regarding the group's interstate travels and movements while engaging in prostitution. In addition to the testimony, we also had an abundance of hotel and travel records, phone records, credit card purchases, emails. The defendants in this case also actually had a website that they had created to assist in the facilitation of commercial sex acts. In addition to photos, condoms, sex toys, the 911 call, the district court even noted in the memorandum in order denying the motion for a new trial that there was compelling evidence of defendants' guilt, which renders it unlikely that there would have been a reasonable probability of a different verdict. And that's district court number 258, docket number 258. So in this particular case, there was sufficient evidence presented. In this particular case, a reasonable jury could and did conclude that the defendant was guilty. And unless there are some other questions, I believe that I have covered everything that defense counsel has brought up. Apparently not. So we thank you for your argument. So, Your Honor, in light of the matters that have been put forth within the government's brief, as well as the matters asserted today, we'd ask that this court affirm the convictions and sentence in this case. Very well. Thank you. Thank you. May it please the court. Yes, of course. A couple of quick kind of bullet points, if you will. First, at sentencing, we did object that the sentence was procedurally and substantively improper. We would direct the court's attention to pages 35 and 43 of the transcript. The problem at sentencing was that the court effectively sentenced Mr. Zerba on acquitted conduct after a specific verdict form with specific factual findings that were totally inconsistent with this cross-reference. And the court did not even elaborate on the idea that it was finding it by a preponderance or by clear and convincing evidence or whatever it may be. The second issue is with respect to this mistrial. The court did, in no uncertain terms, declare a mistrial. The court said, quote, this will be a mistrial. That's on page four of that volume. The court said to the jury, there are two choices. We can declare a mistrial or go forward with 11. The parties have to agree on that. The parties have not agreed on that. The jury was clearly aware that it's Mr. Zerba who would be the one to not want 11 jurors versus 12 jurors because the government's burden would therefore be lower. And even the trial court itself acknowledged on page four of that record that this will be a, quote, interesting question for appeal, end quote. I think it's appropriately recognized as so. Finally, Your Honor, with respect to Brady, we would reference the court to the Leka, L-E-K-A case on page 39 of our opening brief. And finally, with respect to suppression, this argument that the prosecutor, and if I may briefly complete this thought, Your Honor, this argument that the prosecutor just made that essentially the affidavit was incorporated into the warrant because it was signed by the judge was not raised at the trial court level. However, it was not objected to at the trial court level. It was not raised in the brief, and it's not actually accurate because the affidavit itself was not incorporated as the district court itself found. And that's district court docket number 121 at page 10. That's a finding that's subject to clear error. And for those reasons and all the others, we ask that this court reverse the convictions. Very well. The case is submitted. Thank you. We'll take it under consideration. That concludes our argument calendar for this morning.